

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

### SHERMAN DIVISION

JUAN MELECIO ESPARZA, #1406047 §

VS. § CIVIL ACTION NO. 4:11cv425

DIRECTOR, TDCJ-CID §

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner Juan Melecio Esparza, an inmate confined in the Texas prison system, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## Background

Petitioner is complaining about his Denton County conviction for murder, Cause Number F-2005-2101-C. A jury found Petitioner guilty as charged and then sentenced him to seventy-five years' confinement. The Second Court of Appeals affirmed the conviction and sentence in an out-of-time appeal on March 19, 2008. *Esparza v. State*, No. 02-08-0000326-CR, slip op. (Tex. App.–Fort Worth 2009, pet. ref'd). The Texas Court of Criminal Appeals (CCA) refused

1

Petitioner's petition for discretionary review. *Esparza v. State*, PDR No. 1521-09. Petitioner then filed an application for state writ of habeas corpus. The trial court entered detailed findings of facts and conclusions of law, recommending that relief be denied. The CCA adopted the trial court's findings and denied relief on March 23, 2011. *Ex parte Esparza*, WR-70,204 -02 at cover.

Petitioner filed the present federal petition alleging that he is entitled to relief because his trial counsel was ineffective by:

1.      Misleading Petitioner concerning voluntary deportation;

2.      Advising Petitioner not to accept a thirty-year plea bargain;

3.      Failing to present evidence;

4.      Failing to interview or present witnesses; and

5.      Failing to object.

Respondent filed a Response, asserting that Petitioner's issues are without merit. Petitioner did not file a Reply.

## Statement of Facts

The Second Court of Appeals summarized the facts of this case:

A jury convicted Appellant Juan Melecio Esparza of murder and assessed his punishment at seventy-five years' confinement. The trial court sentenced him accordingly. In three points, Appellant argues that the trial court improperly admitted testimony of Esmeralda Diaz concerning found luggage and its contents, that the testimony was more prejudicial than probative, and that in the absence of the said testimony, the evidence is factually insufficient to show that Appellant intentionally and knowingly caused the death of Rebecca (Becky) Sosa. Because Appellant has not preserved error in the admission of evidence and does not otherwise challenge the factual sufficiency of the evidence, we affirm the trial court's judgment.

Becky Sosa and Appellant had a rocky relationship. Around September 2004, they began dating, and they quickly moved in together. In 2005, Becky's relatives began to notice bruises and bite marks on her body and became aware of Appellant's

controlling and jealous behavior. They spoke to Becky about her leaving Appellant. On June 11, 2005, Josephine Coss, Becky's cousin, went to the home Becky and Appellant shared to see if they would attend a party that night with Becky's family in celebration of another cousin's high school graduation. Appellant said that he did not like Becky's "piece of shit family." Becky's cousin heard Appellant say that if Becky went to the party, he would kill her. Becky, however, did go to the party. She wore a blue jean dress with stripes and a pair of white shoes. When Becky arrived at the party, she told Coss that she "left that piece of shit" because her family comes first.

Later that night, Becky decided to go to her house to change shoes. Coss went with her. When they got to the house, Becky went into her bedroom, and she and Appellant began to argue. Coss heard Appellant threaten Becky. He told Becky that if she left the house, something would happen to her.

Becky returned to the party and appeared to have a good time. Becky did ask her cousin, Julie Sosa, to take care of Becky's children, however, should anything happen to her. After the party, Becky drove Coss home. The two women lived a few houses apart on the same street and were very close.

On June 13, 2005, after not hearing from Becky on June 12, 2005, the day after the party, receiving no answer at her door, and seeing no sign of her car, Coss filed a missing person's report. That same day, she entered Becky's home through an open window. Coss found Becky's body in her bedroom. Becky's body was clothed in the same blue jean dress that she had worn to the party earlier that weekend. Her body showed bruise marks from an apparent beating, and she had a bullet wound in her head. No gun was located in the home, and Becky's car was gone. Appellant was gone, and pictures of Becky, her children, and Appellant were also missing.

The police received an anonymous tip that Appellant was hiding in a neighborhood in Fort Worth. A surveillance team made up of Denton police officers, Fort Worth police officers, and Texas Rangers apprehended him after they found him hiding behind a tree.

The day after Appellant's arrest, the man who owned the property where Appellant had been arrested called the police and reported that he had found a loaded gun hidden in a trash bag inside the ice cream cart he used in his business. The gun was shown to be the same gun that fired the bullet into Becky's brain. Ammunition for that gun was found during the search of Appellant's rented room down the street from the spot where he was arrested. The police recovered Becky's car about half a mile from Appellant's rented room.

In May 2006, Becky's former landlord, Esmeralda Diaz, an assistant probation officer

with Denton County Community Supervision Department, found a black suitcase in a storage shed behind the house Becky was renting from Diaz and her husband at the time of Becky's death. Diaz testified that the shed was kept locked and that only she and her husband had the keys to it, so it was not accessible to tenants. But Diaz noticed that a window had been broken out in the storage shed. She had looked inside the shed not long after Becky's death and had seen nothing. But after seeing the broken window in May 2006, she and her husband entered the shed and discovered a black luggage bag under a desk in the shed. Diaz realized that the bag did not belong to them, so she and her husband opened it and discovered neatly folded clothing that she described as male clothing; picture identification cards; pictures of Becky and Appellant; pictures of Appellant and an older woman; a cell phone with pictures of Becky, her children, and Appellant on it; and letters between Appellant and Becky. Rather than keep the bag or turn it over to the police department, and rather than notify the district attorney's office, she threw the bag and its contents away.

*Esparza*, slip op. at 1-5.

## Federal Habeas Corpus Relief

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed.2d 385 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the

adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 1517-18, 146 L. Ed.2d 389 (2000); *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. 1522-23. Rather, that application must be objectively unreasonable. *Id.* 529 U.S. at 409, 120 S. Ct. at 1521. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal district court must be deferential to state

court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Beel v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed.2d 914 (2002); *see Williams*, 529 U.S. at 404, 120 S. Ct. at 1519. A state application that is denied without written order by the Texas Court of Criminal Appeals, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993).

Ineffective Assistance of Counsel at Trial

Petitioner claims that his trial counsel was ineffective in numerous instances.

Legal Standard

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56

6

F.3d 662, 667 (5ᵗʰ Cir. 1995). In order to succeed on a claim of ineffective assistance of counsel, a habeas corpus petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5ᵗʰ Cir. 1981); *Rubio v. Estelle,* 689 F.2d 533, 535 (5ᵗʰ Cir. 1982); *Murray v. Maggio*, 736 F.2d 279 (5ᵗʰ Cir. 1984). Secondly, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove the prejudice component, the court need not address the question of counsel's performance. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069.

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded state court decisions, which has been referred to as "doubly" deferential. *Harrington v. Richter,* 526 U.S. 86*,* 131 S. Ct. 770, 788, 178 L. Ed.2d 624 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d), as amended by AEDPA,

"stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this court's precedents. It goes no farther." *Id.* "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.*; *see also Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

AEDPA also states that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254( e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001). This presumption is especially strong where the trial judge and the state habeas judge are the same, as they are in this case. *Miller-El v. Johnson*, 261 F.3d 445, 454 (5th Cir. 2001) (*rev'd on other grounds*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed.2d 931 (2003)).

Further, the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court, except for the narrow exceptions contained in § 2254(e)(2). Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding, " it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would not be helpful to a habeas petitioner. 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). If a habeas petitioner failed to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). Failing to meet this standard of diligence will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *Williams v. Taylor*, 529 U.S. 420, 436, 120 S. Ct. 1479, 146 L. Ed.2d 435 (2000). Even if a petitioner can meet the foregoing standard, it is within this court's discretion to deny a hearing if sufficient facts exist to make an informed decision on the merits. *Clark v. Johnson*, 227 F.3d 273, 284-85 (5th Cir. 2000).

Misleading Concerning Voluntary Deportation

Petitioner claims that his trial counsel was ineffective for misleading him concerning "voluntary deportation." Specifically, Petitioner complains that trial counsel Adame warned him that if Petitioner signed a "voluntary deportation," Petitioner would face the prosecution unrepresented at a deportation hearing. He states that Adame advised him "that he had a better chance of having the murder charge dropped if [Petitioner] took the case to trial . . . [because] he could get probation or no more than ten years."

The court first notes that Petitioner's claim is completely conclusory. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *United States v. Woods*, 870 F.2d 285, 288

(5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 7 99 (5th Cir. 1982). Petitioner presents nothing more than his self-serving statement to support his claim.

Furthermore, Petitioner has not shown that he was eligible for a voluntary departure or that a voluntary departure would have resolved the charges against him. The state habeas court considered this issue and found (citations omitted):

> 4. In Ground One, Applicant alleged he wanted to sign for a "voluntary deportation" but declined to do so because counsel, the Honorable Derek Adame, warned that if he signed, Mr. Adame would no longer be representing Applicant and he would have to face the Denton County prosecutors all alone at a voluntary deportation hearing. Applicant has cited no statute or law indicating he is eligible to receive a "voluntary deportation." The State answered that it was not aware of any legal basis on which a person, facing murder charges, can sign for a "voluntary deportation." Thus no party has provided the Court with any authority showing that Applicant had an option of a "voluntary deportation," regardless of what Mr. Adame allegedly said to Applicant.

*Ex parte Esparza*, WR-70,204-02 at 106. It then made the following conclusion of law:

> 1. A "voluntary departure" is a procedure where an alien who is undergoing deportation proceedings can depart the country voluntarily if the Attorney General determines, in his discretion, that the alien has been of good moral character for the five years immediately preceding his application for voluntary departure. *See Becerra-Jimenez v. I.N.S.*, 829 F.2d 996, 997 (10th Cir. 1987). Evidence of a pending felony is a valid basis on which to find that an alien is *not* of good moral character. *See Parcham v. I.N.S.*, 769 F.2d 1001, 1005 (4th Cir. 1985). Even if Applicant could demonstrate that he satisfied the minimum statutory requirements for voluntary departure, which he has not, such requirements are not sufficient in themselves for the granting of voluntary departure absent a discretionary determination by the Attorney General that the applicant is of good moral character. *See id.* at 1004.
>
> Because Applicant could not have received a voluntary departure, he has not satisfied either prong of *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

*Ex parte Esparza*, WR-70,204-02 at 108-9. The Court of Criminal Appeals adopted these findings

when it denied state habeas relief. Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 131 S. Ct. at 784.

Advice on Plea Bargain

Petitioner complains that trial counsel was ineffective for advising him not to accept a thirty-year plea bargain. He states that he turned down the thirty-year plea bargain because counsel guaranteed him a ten-year sentence or probation.

In recent cases decided by the United States Supreme Court, *Lafler v. Cooper*, 566 U.S. —, 132 S. Ct. 1376, 182 L. Ed.2d 398 (2012), and *Missouri v. Frye*, 566 U.S. —, 132 S. Ct. 1399, 182 L. Ed.2d 379 (2012), the Supreme Court has discussed ineffective assistance of counsel claims as it pertains to the plea bargain stage. In *Lafler*, the Supreme Court held that a petitioner must show that "but for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that, in fact, were imposed." 132 S. Ct. at 1385. Petitioner, however, has failed to provide evidence that a thirty-year plea bargain was offered by the State or that a court would have accepted a thirty-year sentence. Trial counsel

11

submitted an affidavit in response to Petitioner's claims made in his state habeas:

As to Designated Issue 1, the State did not make a final plea offer of 30 years confinement. The only plea bargain offer ever extended by the State was an offer of 50 years TDC. See attached Exhibit 1, a letter from the prosecutor that memorializes the extent of our plea bargain negotiations.

As to Designated Issue 2, I discussed fully with Mr. Esparza the ramifications of accepting the plea bargain offer. Remembering that the only plea bargain offer we ever received was for 50 years TDC, my advice to Esparza upon communicating the offer to him was that he not accept it. I explained to him that because murder is an "aggravated" or "3G" charge, he would be required to serve at least 25 years before parole eligibility. Further, I explained to him that any sentence above 60 years we should receive at trial would result in a minimum of 30 years served before parole eligibility. So essentially, if we were to reject the offer and receive more at trial, we were only looking at a practical difference of 5 years. I therefore explained to Esparza that in my opinion a 50 year offer was essentially no offer at all, and trial was the only reasonable alternative. As I explained to Esparza, any number we got at trial less than 50 years would be a better result. I explained to Esparza further that in my opinion, if the state were to offer us 30 years or less, it would be wise to strongly consider accepting that offer. I believe that this is why he has convinced himself that a 30 year offer was extended, when in fact, it never was.

As to Designated Issue 3, no 30 year offer was extended, so of course, I never declined it and decided to try the case. In now more than 16 years of practicing criminal law, I have never "declined an offer" and "decided to try" a case, because that is not my job. The decision to take a case to trial is solely the decision of the client to make, and in this instance it was Esparza who made that decision. My advice to him was that given the 50 year offer, trial was his best course of action in my opinion, and while he was not thrilled by the prospect of a jury trial, he followed my advice and instructed me to set the case for trial.

As to Designated Issue 4, I made no promise of probation of a 10 year sentence. In fact the words "ten year" and "probation" were never uttered in regards to this case by me. Esparza was alleged to have murdered his wife, who he had habitually abused physically, by shooting her in the head, leaving her to die, and absconding from the jurisdiction. I cannot imagine how an attorney with my level of training and experience would ever even contemplate that a jury would seriously consider these as viable sentencing options under the particular circumstances. Further, as I explained to Esparza, at punishment the jury has the full range of punishment at its disposal. I can no more "get" someone probation or a 10 year sentence on a murder charge than I can "get" them the winner of the Super Bowl.

*Ex parte Esparza*, WR-70,204-02 at 100-02.   The state court rejected this claim and made a

credibility choice in favor of trial counsel; thus, counsel's statements in his affidavit are

presumptively correct.   The state court findings and conclusions included (citations omitted):

> 5.    In Ground Two Applicant contradictorily asserts that his counsel, Mr.
> Derek Adame, decided on his own to take the matter to trial rather
> than accept the State's offer of 30 years and that Applicant made the
> decision to go to trial rather than accept the State's offer because "he
> relied upon the skills and knowledge Adame expressed to him, which
> is the 'only' reason he did not accept the DA's offer of thirty (30)
> years."
>
> The Court finds the affidavit submitted by Mr. Adame to be credible.
> The State never offered 30 years confinement, but only 50 years.   Mr.
> Adame   reasonably recommended to Applicant that he go to trial,
> rather than accept the 50-year-offer, and require the State to prove its
> case.   Yet the decision to go to trial was solely made by Applicant.
> Mr. Adame made no promise of probation or a 10-year sentence.
>
> . . .
>
> 2.    Because Applicant himself, rather than his attorney, made the
> decision to take Applicant's case to trial, because the State never
> offered 30 years confinement, because Mr. Adame's recommendation
> was reasonable as to the advisability of trying the case, and because
> Mr. Adame did not promise an outcome of probation or a 10-year
> sentence, Applicant has not demonstrated ineffectiveness of counsel
> under either prong of the Strickland standard.

*Ex parte Esparza*, WR-70,204-02 at 106, 109.

Applying the holding from *Lafler*, Petitioner  has failed to show that counsel advised him to

decline a plea bargain offer, followed by a trial and conviction, resulting in a more severe sentence

than the one offered during plea bargaining.   *Lafler*, 566 U.S. — , 132 S. Ct. 1376.   Nor has

Petitioner shown that counsel failed to communicate a plea offer more favorable than one later

accepted.   *Frye*, 566 U.S. —, 132 S. Ct. 1399.   Petitioner has failed to meet his burden under

13

*Strickland*. He also has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 526 U.S. —, 131 S. Ct. at 784.

Failure to Present Evidence

Petitioner next complains that trial counsel was ineffective for failing to present evidence that the victim committed suicide. It appears that Petitioner is claiming that trial counsel changed his trial strategy from the victim committing suicide to an accidental shooting. Trial counsel addressed this issue in his affidavit, which was submitted in Petitioner's state habeas proceedings. In it, counsel explained that his strategy never changed. He was offering any reasonable alternative that the facts would support: suicide, accidental shooting, an alternative shooter, sudden passion. He noted that suicide was an especially weak defense, given the nature of the victim's wounds (based on the State's expert testimony discussing the trajectory of the bullet, the fact that the victim was right-handed, and wounds that were interpreted to be defense wounds). Petitioner had admitted to his trial counsel that he and the victim had struggled over the gun. Trial counsel believed that the best strategy for Petitioner's defense was to "let the facts suggest a reasonable doubt that the shooting was intentional instead of accidental."

Trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066.

Deference must be applied to counsel's judgment in assessing unreasonableness. *Id*. On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065. Trial counsel's strategic choices are virtually unchallengeable after a thorough investigation into the law and relevant facts are made. *Id.,* 466 U.S. at 690, 104 S. Ct. at 2066. "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Petitioner has failed to rebut the presumption that counsel was following a sound trial strategy.

Moreover, a review of the record shows that the state habeas court looked into these allegations. It found that trial counsel did not change his defensive strategy from suicide to accidental shooting during the trial. It concluded that "Because Mr. Adame's defensive strategy was consistent and reasonable given the circumstances of the case, Applicant has not demonstrated ineffectiveness of counsel under either prong of the Strickland standard." *Ex parte Esparza*, WR-70,204-02 at 106-07, 109. The Court of Criminal Appeals adopted these findings when it denied Petitioner's state writ. The implicit and explicit findings and determinations of the court are entitled to a presumption of correctness to which Petitioner has not rebutted with clear and convincing evidence to the contrary. *Neal*, 239 F.3d at 696. Petitioner has failed to show that his trial counsel was deficient or that he was prejudiced by such alleged deficient performance. He has also failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 526 U.S. —, 131 S. Ct. at 784.

Failure to Call Witnesses

Petitioner claims that trial counsel was ineffective because he failed to interview and call witnesses. Specifically, he contends that Felipe Sosa, Christina Hernandez, and the victim's grandmother should have been called to testify at trial. He claims that, had counsel presented these witnesses, the State would not have been able to impeach his character.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985). A petitioner must overcome a strong presumption that his counsel's decision in not calling a particular witness was a strategic one. *Murray v. Maggio, Jr.*, 736 F.2d 279, 282 (5th Cir. 1984). Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed.2d 839 (1984). Moreover, to succeed on the claim, Petitioner must have shown that had counsel investigated, he would have found witnesses to support the defense, that such witnesses were available, and had counsel located and called these witnesses, their testimony would

have been favorable and they would have been willing to testify on Petitioner's behalf. *Alexander*, 775 F.2d at 602; *Gomez v. McKaskle*, 734 F.2d 1107, 1109-10 (5th Cir. 1984), *cert. den.*, 469 U.S. 1041 (1984). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. In the instant case, Petitioner provides no evidentiary support for his claims. *Id.* He has failed to show that the witnesses were available and willing to testify, and that the substance of their testimony would have been favorable to his defense. *Alexander*, 775 F.2d at 602. This claim is without merit.

Petitioner also complains that trial counsel should have investigated other witnesses, but fails to allege what evidence would have been revealed, and how it would have changed the outcome of his trial. Furthermore, the state court considered these claims, It found that Petitioner had not met his burden to show ineffective assistance for the failure to call witnesses. It concluded, "Because Applicant offers only unsupported assertions about what alleged defensive witnesses might have said if they had testified, he is not entitled to habeas relief." *Ex parte Esparza*, WR-70,204-02 at 109. Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 526 U.S. —, 131 S. Ct. at 784.

Failure to Object

Petitioner asserts that his trial counsel was ineffective for failing to object pursuant to Rule 403 to testimony about a suitcase and its contents. A failure to object does not constitute deficient

representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Moreover, to show prejudice from counsel's alleged deficient performance, a petitioner must show a reasonable probability that, but for trial counsel's errors, the defendant's sentence would have been significantly less harsh. *United States v. Franks*, 230 F.3d 811, 814 (5th Cir. 2000). Petitioner is simply mistaken concerning this issue. Trial counsel did object to the admission of this evidence as irrelevant, although he did not explicitly mention Ruled 403. His objections were overruled. Petitioner has failed to show that further objection, based on Rule 403, would have been successful. He has not shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Moreover, the state habeas court considered and rejected this claim. It noted that the evidence about which Petitioner complains was statutorily admissible under Texas Code of Criminal

Procedure Article 38.36(a). It also noted that the evidence was highly probative and admissible; accordingly, it concluded that the trial court would have overruled a Rule 403 objection. By rejecting Petitioner's claim in his state habeas proceeding, the state court made the finding that counsel was not ineffective. *Ex parte Esparza*, WR-70,204-02 at 109-10.

The implicit and explicit findings and determinations of the court are entitled to a presumption of correctness to which Petitioner has not rebutted with clear and convincing evidence to the contrary. *Neal*, 239 F.3d at 696. Petitioner has failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 526 U.S. —, 131 S. Ct. at 784.

Conclusion

Petitioner failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Moreover, in each of his claims, Petitioner failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the

state court to deny relief. *Richter*, 526 U.S. —, 131 S. Ct. at 784. Accordingly, his petition should be denied and dismissed.

Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1604, 146 L. Ed.2d 542 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*.; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

20

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

It is respectfully recommended that reasonable jurists could not debate the denial of the Petitioner's § 2254 petition on procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 134, 154 L. Ed.2d 931 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that the court find that the Petitioner is not entitled to a certificate of appealability as to the claims raised.

## Recommendation

It is therefore recommended that the petition be denied and dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1)

(extending the time to file objections from ten to fourteen days).

**SIGNED this 28th day of August, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE